(No. 35047.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES WILLIAMS, Plaintiff in Error.

*Opinion filed September 24, 1959.*

DONALD J. BERMAN, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY and WILLIAM L. CARLIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Charles Williams, was jointly indicted in the criminal court of Cook County with Willie Cowling, John Harris, and Marvin Wells, for the crime of armed robbery. Cowling entered a plea of guilty. After waiver of jury trial, Williams and Wells were tried together before the court and were found guilty. Williams was sentenced to confinement in the penitentiary for a term of not less than two nor more than ten years and his post-trial motions were overruled. By writ of error, he seeks to reverse the judgment of his conviction.

Defendant Williams contends that the evidence did not establish his guilt beyond a reasonable doubt, since his con-

viction was based largely upon the uncorroborated testimony of an accomplice; and that the court erred in receiving evidence concerning his conviction of an unrelated crime. Other assigned errors were not argued, and have thus been waived. *People* v. *Kelly,* 8 Ill.2d 604; *People* v. *Moretti,* 6 Ill.2d 494; *People* v. *Johnson,* 2 Ill.2d 165.

The evidence for the People established that on March 29, 1956, shortly before midnight, two armed men entered a gasoline filling station at 701 E. Oakwood Boulevard in the city of Chicago. One carried a hand gun, the other a sawed-off shotgun. After announcing that this was a "stick-up," they took the attendant's wristwatch, money changer, and the currency which he had on his person. They also took money from the pockets of an elderly gentleman who was present, forced the victims of the robbery into a back room, and departed with the cash register. The owner of the station and the police were immediately notified of the occurrence.

Co-defendant Cowling testified for the People that he saw the defendants Williams and Wells in a pool room located on 43rd Street between South Park and Calumet avenues on March 29, 1956, at about 11:00 P.M.; that Williams stated that he wanted to see him; that they left the pool room and proceeded to Williams's car, a gray and green Oldsmobile, which was parked across the street; that co-defendant Wells was seated on the right side in the front seat and co-defendant Harris was in the rear seat; that the witness got into the car and sat beside Harris; and that Williams sat in the driver's position.

Cowling further testified that Wells then said that he knew where they could get some money; that he asked where, and Wells replied at a gas station located on Oakwood Boulevard; that Wells then handed Cowling a shotgun and Williams drove to the gas station where he parked the car on an adjacent side street; that Williams and Wells remained in the car while Harris, armed with a hand gun,

and Cowling, with the shotgun, got out of the car and entered the station, where they found a young man in charge, and an elderly gentleman.

The witness further stated that Harris told them to "stick 'em up," after which Cowling took a wristwatch, a money changer and currency from the attendant, went through the pockets of the elderly man, and then forced them into a back room; that Harris carried away the cash register as he and Cowling departed; that when they returned to the car, Wells was in the driver's position and Williams sat with him in the front seat; that Cowling handed the shotgun to one of them and he and Harris got in the back seat, after which Wells drove to an apartment house located on Calumet Avenue between 43rd and 44th streets, where a relative of Williams lived in a second floor apartment; and that the four men entered the building and went into a bathroom where they counted and divided the money, each receiving about $26, and then left the cash register in the bathroom, and went away from the apartment building together.

Cowling further testified that on the evening of the following day, March 30, while he, Williams, Harris and Eugene Bryant, were seated in Williams's car which was parked near this apartment building, two police officers placed them under arrest and searched the car. The officers found a .32 calibre revolver and a shotgun in the car, which Cowling identified as having the appearance of the guns which were used by Harris and himself in connection with this robbery.

On cross-examination Cowling admitted that he was under indictment on three additional charges of armed robbery and that he knew of the punishment he might expect. He denied that the State's Attorney had promised leniency to secure his testimony, but stated that he had talked with him in the presence of his attorney. In answer to questions by defense counsel, he repeated most of the

details of the crime, essentially as related on direct examination. In addition, he stated that he had known Williams only a week or two prior to the robbery and that he met him at the apartment house on Calumet Avenue through a friend named Owen, who also lived there. He was not certain that Williams's car was a two door sedan, although he had so testified on direct examination. When questioned about the arrest, he stated that he and Bryant had been seated in Williams's car for some time before Williams and Harris came out of the apartment house and that the police arrived a few minutes later.

Eddie Hill, a police officer, testified that about 8:15 P.M. on March 30, 1956, he and his partner were cruising on Calumet Avenue in the 4300 block when they noticed a 1949 automobile parked at the curb. The numbers of its license plates corresponded with those previously noted by the officer when he came on duty. The officer knew Williams, Harris, Cowling and Bryant. Williams was then attempting to start the car. After the officers identified themselves, they ordered the men to get out of the car and arrested them.

He further testified that upon searching the car, they found a loaded .32 calibre revolver lying on the floor near the back seat, and a sawed-off shotgun in the trunk. Officer Hill identified the weapons produced at the trial as those found in Williams's car. These were the same guns which, according to Cowling's prior testimony, had the appearance of those used by him and Harris in the robbery. All four of the arrested men denied owning the guns or any knowledge of how they had gotten into the car. On cross-examination, Hill stated that Williams's automobile had four doors.

The defendant Williams testified on his own behalf. He gave an Aurora address as his place of residence, stated that he had been at his home during the entire evening and night of March 29, 1956, and denied being in Chicago at

any time on that date. He further testified that he did not know Cowling prior to March 30; that he first met him when he entered the car just prior to his arrest. He also denied knowing a man by the name of Owen; denied that Owen had introduced Cowling to him at the apartment house on Calumet Avenue a week or two prior to the robbery; and denied participation in the robbery, ownership of the guns which were found in his car, and any knowledge of how they came to be there.

On cross-examination he admitted that he knew Owen who lived in an apartment next to the one occupied by Williams's stepsister at the Calumet Avenue address. This was the apartment house where the money was divided and where Williams and Harris had been just prior to their arrest. He stated that he had been working at a junk yard in Aurora, but did not work on March 29. Later he said that he worked in Peoria for the same employer on that date, but had returned to Aurora that evening.

In order to account for the presence of his car in Chicago on March 29 and 30, he stated that Harris, his stepbrother, borrowed the car in Aurora at about 6:00 P.M. on March 29, and, after agreeing to return it the following day, drove it to Chicago. Williams further testified that on the evening of March 30, James Hall, a friend, drove him to the apartment house on Calumet Avenue, where he found his stepbrother and demanded the keys to his car. He denied that he had ever been in the pool room on 43rd Street and that he knew Wells.

Wells testified that he did not know Williams prior to March 30, and that he first saw him at the police station following his arrest. He denied that he took part in the robbery, but admitted that he knew Cowling and had participated in other robberies with him prior to that date. He stated that on March 29, he was at his sister's home, went to the pool room on 43rd Street about 6:00 P.M., saw

Cowling, but did not see Williams there; and that he attended a movie and then returned to the pool hall at about 8:30 P.M. He further testified that he remained in the pool room until 1:00 A.M. when he went to another movie where he stayed until 6:00 A.M.; and that he did not see Cowling in the pool room after his return from the first movie.

In rebuttal, the People called Otto Franklin, manager of the pool room. He stated that he knew Wells, did not know Williams, but had seen him in the pool room on several occasions during a period of two or three months prior to March 29, 1956. He also stated that Williams and Wells had been in the pool room at the same time, but he had never observed them in conversation.

Without objection on the part of defense counsel, the People introduced the duly certified and authenticated record of Williams's conviction of a felony and his sentence to the penitentiary in the State of Ohio.

In rebuttal, the defendants were permitted to call Eugene Bryant as a witness. He testified that he went to the pool room daily but had never seen Williams there. On cross-examination he admitted that he was not there all day or every day and that he did not see everyone who came in.

There is nothing in the record which would justify the conclusion that Cowling's testimony was unsatisfactory. Nor can it be said that it is so inherently improbable as to render it unreliable or untrustworthy. Though subjected to a rigorous cross-examination, his story remained the same except for his uncertainty about the number of doors on Williams's car—a minor detail when considered in relation to all the other evidence. His confusion in this respect would not justify this court in disregarding his other testimony which was corroborated by facts and circumstances in the record.

We cannot agree with the suggestion that Cowling's

testimony was unreliable because he expected some advantage. It does not follow, as counsel contends, that he would not have testified unless he expected leniency. The fact that an accomplice testifies for the People in a case does not warrant such conclusion. Cowling stated that he had made no deal with the State's Attorney and this testimony stands unimpeached and uncontradicted.

Even though an accomplice expects or has been promised leniency, a conviction based upon his testimony will not necessarily be reversed. (*People* v. *Johnston*, 382 Ill. 233; *People* v. *Wagman*, 311 Ill. 330.) As stated in *Wagman,* the fact alone that an accomplice has been promised leniency does not necessarily require that his testimony should be disregarded. It is, of course, proper to consider such fact, if it is the fact, in determining the weight and credibility to be given to the testimony of the witness.

Moreover, Cowling's testimony was corroborated. The details of the robbery, as related by him, coincided with the facts stated by the service station attendant, with reference to the number of men who entered the station, what was said, the description of the guns used and of the property taken. Cowling testified that the stolen money was divided at the apartment house on Calumet Avenue where a relative of Williams lived. Williams admitted that his stepsister had an apartment there and that he visited her, as well as other relatives who lived there from time to time.

Cowling testified that a hand gun and a shotgun were used in the robbery and he identified the guns which were taken from Williams's car and produced at the trial as having the appearance of those he saw on the night of the robbery. These and other corroborating facts and circumstances lend credence to Cowling's testimony that Williams was an actual participant in the crime.

Williams denied that he participated in the robbery, and

also interposed an alibi as a defense. If the defense of alibi is to succeed, it must be established by facts which would create a reasonable doubt that the defendant committed the crime charged. *People* v. *Thomas,* 7 Ill.2d 278.

Williams's statement that he was in Aurora at the time the crime was committed is entirely unsupported. He testified that he lived there with a "landlady" but failed to call her as a witness. He also stated that John Harris, his stepbrother, had seen him in Aurora on the evening of March 29, but Harris did not testify. Neither did James Hall appear as a witness to corroborate Williams's story that Hall had driven him to Chicago on the evening of March 30. Without supporting evidence or testimony, the claim of alibi can be given little weight and its worth was dependent upon the credibility of defendant as a witness. In making such determination, it is proper to consider his interest and the extent to which he is corroborated or contradicted by other facts or circumstances in evidence.

His entire testimony must be weighed in the light of the fact that he stated that he had never been in the pool room on 43rd Street, whereas its manager testified that he had seen him there several times for two or three months prior to March 29, 1956. There is much in Williams's testimony, especially that given on cross-examination, which renders it vague, uncertain and unsatisfactory. When hard pressed on cross-examination, he was evasive and his testimony lacked that ring of truth which would inspire belief in his innocence and lend credence to his claim of alibi.

The evidence for the People, if believed, is clearly sufficient to establish the guilt of the defendant beyond a reasonable doubt and there is no reason to disbelieve it in view of the corroborating facts and circumstances. Unless there is reasonable doubt as to defendant's guilt based upon the evidence, it is our duty to affirm the judgment, if the record is free from substantial prejudicial error.

The record of defendant's prior conviction of a felony in the State of Ohio was admissible and was competent for the purpose of impeaching his credibility as a witness. (Ill. Rev. Stat. 1955, chap. 38, par. 734; *People v. Wheeler,* 5 Ill.2d 474; *People* v. *Lane,* 400 Ill. 170.) Here the defendant testified on his own behalf and his credibility thereby became an issue. The record of conviction is free from any prejudicial error.

The judgment of the criminal court of Cook County will be affirmed.

*Judgment affirmed.*