Van Voorhis, J.
If a defendant has made use of any false or fraudulent representation or pretense in the course of .accomplishing, or in aid of, or in facilitating a theft, evidence thereof may not be received at the trial, unless the indictment dr information charges . such, representation or pretense (Penal Law, § 1290-a). This statute (L. 1950, ch. 149) enacted the principles expressed in the dissenting opinion by Judge Fuld in People v. Lobel (298 N. Y. 243): Appellant contends that evidence of this character was illegally introduced against him in this prosecution for grand larceny in the first degree. The record does not indicate, however, that any such representation or pretense was used in this instance. Jennie Finch is the complaining witness *241 on the first count in the indictment, which is the only one which is before us. Her testimony is that she withdrew $200 from Jamaica Savings Bank at 161st Street and Jamaica Avenue, Queens, on August 29, 1960 at about 12:00 m. Her purpose in making this withdrawal was “ to get a money order to send taxes down to South Carolina.” After coming out of the bank she met defendant Brown, who inquired of her whether she knew a lady whose address was on a piece of paper in his hand. She replied that she did not know her, but told him that he should get a telephone book and she would find this person. While they were looking in the book, the defendant Meyers came up and all three of them hunted in the telephone book to find the number. Brown told her that he did not have a place to stay, she referred him to the YMCA, but he objected for the reason that “ There is nothing in there but men.” She got into their automobile with them and they drove around for a while after which she got out of the car and returned to the hank. She testified that her granddaughter had just been discharged from Memorial Hospital and that the hospital bill was $800. While she was writing a slip to withdraw the additional sum of $800 for this purpose, she testified that another man entered, also a negro, and that when she left the bank he walked with her, side by side, and took her to the same car. Brown and Meyers were there. This time they ‘ ‘ pushed me into the car. ’ ’ After that, ‘ ‘ they started their maneuvers ’ ’. The testimony at this point is:
“ The Witness: Brown said to me, ‘ How much money you got.’ I said, ‘ That ain’t none of your business.’ Meyers took my bag. It was a big brown bag.
“The Court: He took your bag.
“ A. (continuing) And he took my money out of the bag and handed it over the seat to Brown.
“ The Court: Meyers did that?
“The Witness: And in pulling out the money he left $50 in the bank book, stuck it right in the bank book.
“ Q. How much did you have in the bank book then?
“ A. $1,000 was in the bank book. He pulled it out, he took out $950. ’ ’
It is apparent from the record that until this point nothing had been said in the nature of false representations or pretenses, that this time she did not enter the automobile voluntarily but *242 was pushed in, and that her bag containing the $1,000 was taken from her against her will. It was only after this had occurred that she testified that “ Brown said that he had been on a ship since he was seven years old and that his captain told him ‘ that niggers didn’t put money in the bank.’ I said, I put my little bit in there. He said, ‘ Oh no, them is food book, them ain’t no bank book, that’s what you got rations food on.”
It was after this that the complaining witness said that Brown was supposed to bury her money, that he wrapped it in a handkerchief and “ I said ‘ You know he ain’t going to bury no money anyhow. ’ ”
Whatever may have prompted this woman to enter the automobile on the first occasion, nothing in her testimony- — • which is all that there is upon this point — indicates that she was induced to part with any of this money by any pretense or false representation. What was said about burying the money was spoken after she had been pushed into the automobile when she re-entered it the second time and after her purse had been taken from her by force. There is thus no basis for a contention that appellant was convicted in violation of section 1290-a of the Penal Law.
The only other point which merits attention is the argument that Jennie Finch’s identification of appellant Brown was unfair as a matter of law. She -testified on direct examination that she went to the 103rd Precinct Station two or three weeks after the theft and was taken into a room adjacent to the one in which the defendants were in custody. She looked through a small window at the suggestion of the police officer into the other room, and identified the defendants. There were three people in the other room, the two defendants, both negroes, along with another individual, a detective, who was white. It does not appear whether they had an attorney at that time. On June 12,1967, the United States Supreme -Court decided the cases of United States v. Wade, Stovall v. Denno and Gilbert v. California (388 U. S. 218, 293, 263). It was held in Wade that where the accused has a lawyer, the Sixth Amendment requires that he be given an opportunity to be present at an identification of an accused in a police line-up. In Wade the prosecution did not offer into evidence the testimony of a prior identification, which may be done under our section 393-b of the Code of Criminal *243 Procedure, but relied upon the identification made by the complaining witness of the accused in open court at the time of the trial. The earlier identification in the police line-up was elicited by defense counsel upon cross-examination of the complaining witnesses. The Supreme Court ruled that the exhibition of the defendant to the witnesses in the police line-up prior to trial would not vitiate identification by the complaining witnesses at the trial if the prosecution could establish that the identification was made independently of the prior identification at the police station in the police line-up. The Stovall case held, however, in line with Linkletter v. Walker (381 U. S. 618), Tehan v. Shott (382 U. S. 406) and Johnson v. New Jersey (384 U. S. 719) that the Wade holding is not retroactive, either by postconviction remedy or upon direct appeal. The Wade decision, therefore, does not aid appellant on this appeal.
It is further contended that, regardless of the Wade rule, it was unfair to have allowed evidence of identification where there were only three people in the line, two of them being defendants, who were negroes, and the third being white. Under the circumstances of this case there was no prejudice in the identification of appellant by the complainant.
The judgment of conviction should be affirmed.