**People of the State of Illinois, Plaintiff-Appellee, v. William M. Sutton, Defendant-Appellant.**

**Gen. No. 52,579.**

First District, Third Division.

May 15, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Meehan, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The defendant herein was tried by the court without a jury on charges of attempt to murder and of aggravated battery. He was tried on April 12, 1967, was found guilty on both counts and was sentenced to the Illinois State Penitentiary for a term of not less than five nor more than ten years. From this conviction defendant appeals.

The defendant on appeal contends that (a) the method of the identification of the defendant was improper and highly prejudicial and (b) he was not proven guilty beyond a reasonable doubt because he tendered an alibi which was disregarded and because his identification was vague and uncertain.

On December 2, 1966, Michael D. Davis, the complaining witness, was riding in an automobile with Clarence Simmons, Yvette Shannon and James Macon. At about 11:30 p. m. the car, which was driven by Simmons, came to a stop at South Parkway where there was a flashing red light. There were fluorescent lights on all four corners and the car lights, which were bright, were turned on. The defendant with two other young men who were walking north on South Parkway approached the car. One of the young men threw a garbage can in front of the car. The three of them walked around the front of the car and were banging on the car with their hands. One of them also threw a bottle at the car. The three male occupants of the car got out. Davis and Macon were on the passenger side while Simmons was on the driver's side. One of the young men who had approached the car swung at Davis and then a voice said, "Shoot him! Shoot, him, God damn it, or I will." Davis was then shot in the back after which he ran west toward the back of the car. He was shot twice more and lost consciousness and was revived in the hospital. Davis did not know who shot him.

234

Clarence Simmons testified that he was the driver of the car and that he got out of the car on the driver's side. The defendant Sutton was on the driver's side of the car about ten feet from Simmons. Simmons saw Sutton with a gun and saw him fire three times. Sutton was wearing a three-quarter length black leather jacket and had on a plaid golf-like cap and a sport jacket under the leather jacket. Simmons said Sutton was very bowlegged. On December 4, 1966 Simmons identified a picture of Sutton "as the person who shot Michael Davis."

James Macon testified that he was a passenger in the car and got out on the passenger side. He heard a shot and saw Davis fall. Macon saw Sutton on the driver's side about fifteen feet away. Macon saw Sutton fire the other two shots. He noticed that Sutton was bowlegged and that he had on a dark coat and a light one under it. He was wearing some kind of cap. On December 4, 1966, one of the detectives showed Macon a picture and from it he identified Sutton. He also saw a lineup photograph. Sutton was in the lineup photograph along with eight other people. Macon saw both photographs on the same day.

Detective Donald J. Moriarity was called as a witness by the defense. He testified that two detectives had brought Sutton and eight other young men into the police station and that the police were unable to contact the witnesses so they took a polaroid photograph of the nine young men. Moriarity further testified that the victim and eyewitnesses identified the defendant from police photographs.

The defendant testified that he left his home at 4823 South Prairie Street on December 2, 1966 at about 8:00 p. m. He denied that he shot Davis and denied that he was at the scene. He also testified that he was in various business establishments and in some of them he talked with friends and acquaintances.

Defendant first contends that the identification of the defendant was improperly made and highly prejudicial and that it was based on inadmissible testimony of the complaining witness and the police officers. Defendant cites Stovall v. Denno, 388 US 293, in support of his contention that a constitutionally invalid pretrial confrontation for identification purposes precludes admission of courtroom testimony concerning that identification. Stovall, however, also stated that the principle set forth in the cases of United States v. Wade, 388 US 218, and of Gilbert v. California, 388 US 263, that defendant is entitled to counsel at his pretrial identification would not be applied retroactively, but would only be applied prospectively from June 12, 1967. The photographs of Sutton were shown for identification purposes on December 4, 1966, and December 5, 1966, and the trial was concluded on April 12, 1967.

 While the case at bar is a pre-Wade and pre-Gilbert case, there remains the issue whether the totality of the circumstances surrounding the identification of the accused was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." (Stovall v. Denno, supra, at page 302. See also: People v. Bey, 42 Ill2d 139, 246 NE2d 287.) The circumstances surrounding the instant identification in no way deprived the defendant of due process of law since there is nothing in the record to indicate that anyone suggested to the witnesses that the defendant was a participant in the crime prior to their clear and unequivocal identification of the defendant from police photographs. It is also significant that James Macon identified the defendant from a lineup photograph of nine men. There is no requirement that a lineup must be held to insure a proper identification, and generally the manner or method of identification goes to the weight rather than the competency of the identification evidence. (People v. Brinkley, 33 Ill2d 403, 211 NE2d 730; People v. Capon,

23 Ill2d 254, 178 NE2d 296; People v. Tunstall, 17 Ill2d 160, 161 NE2d 300; People v. Ford, 89 Ill App2d 69, 233 NE2d 51; People v. Lewis, 92 Ill App2d 463, 236 NE2d 417.) In People v. Tunstall, supra, and in People v. Capon, supra, the defendants were identified by pictures only.

The defendant quotes from Wall, Eye Witness Identification in Criminal Cases, which emphasizes that photographic identification procedure must be employed with great care for it creates certain grave problems in the administration of criminal justice. Wall also contends that where a suspect is identified from a photograph, there should be numerous photographs shown and in addition thereto such photographic identification is inherently weak. However, in this case one photograph containing nine persons was shown and the defendant was identified as the one who committed the offenses. Furthermore, in People v. Capon, supra, the Supreme Court held that there is no requirement that a defendant be identified at a police lineup. In that case the police brought photographs to the victim. She identified one photograph as that of the defendant. After the robbery in Capon, the witness first saw the defendant some six months later in court. The court on page 257 said:

> "Considering the conditions under which defendant was observed, and considering that her identification was positive, credible, and unshaken on cross-examination, we cannot say that the jury's verdict was against the manifest weight of the evidence or that the identification was doubtful, vague, and uncertain."

The identification of the defendant in the instant case was neither doubtful, vague nor uncertain. Both Simmons and Macon testified that they saw the defendant shoot Davis. There were fluorescent lights on four corners of the intersection where he was shot and the car lights were on. Davis, the victim, testified that he identified

the defendant based upon his view of the defendant when the car was stopped and that the police did not tell him that Sutton was the man who was present at the time of the occurrence. Simmons testified that he was able to identify the person portrayed in the picture as the man who shot Michael Davis. He testified that he was able to identify him from what he saw on the night of the occurrence. He also stated that his first identification was predicated upon what he saw on the night of the shooting.

As mentioned before, defendant quotes at length from Wall, Eye Witness Identification in Criminal Cases, Chapter III, concerning alleged weaknesses of identifications made from photographs. In commenting on Wall's observations, this court in People v. Bailey, 90 Ill App2d 121, 124–126, 234 NE2d 332 said the following:

> "While not saying so specifically, he (the defendant) would have us ignore the rule that the credibility of a witness is for the trier of fact to determine and that only in exceptional cases should a reviewing court disturb the jury or the trial court's decision.
>
> . . . . . .
>
> "The conclusion the defendant would have us reach is that such evidence is not trustworthy because certain cases have revealed erroneous identifications. What percentage such cases bear to the whole is unknown and in all probability unknowable.
>
> . . . . . .
>
> "But, as Professor Wigmore points out, it is impossible to ascribe a greater weight to one class of evidence than to the other, and each class has its special dangers and advantages. Nearly all evidence is produced through human beings and, as such, the weight to be accorded it is a matter of credibility to be determined by the jury. 1 Wigmore, Evidence, § 26 (3rd ed, 1940)."

238

■ The defendant attacks the identification testimony of the complaining witness on the ground that it was hearsay and inadmissible. In People v. Cook, 33 Ill2d 363, 211 NE2d 374, a police officer was permitted to testify over objection that he had looked at some pictures at police headquarters and had identified the defendant's picture as that of the man he had seen in the tavern. In that case, the court held that the extrajudicial act of identifying a photograph is not hearsay and that the essential feature without which testimonial offerings must be rejected is the opportunity for cross-examination of the party whose assertions are offered. In that case the officer was present in court and was subjected to cross-examination.

In the instant case Davis was present in court and was subjected to cross-examination. His testimony showed that he had previously identified the defendant and it was not offered to bolster an identification by a third party.

■■ The defendant next contends that the testimony of Detective Moriarity which related the identification of the defendant by the witnesses was hearsay. While it is true that such testimony was hearsay (People v. Harrison, 25 Ill2d 407, 185 NE2d 244), the testimony of Moriarity which is now assigned as error was elicited by defense counsel. No objections to Moriarity's answers were made by defense counsel, nor did he move to strike the answers. The defendant having asked for this information, cannot object thereto. People v. Sauber, 68 Ill App2d 133, 214 NE2d 918.

Defendant next contends that the defendant was not proven guilty beyond a reasonable doubt and cites from Stovall v. Denno, 388 US 293, wherein the court said that a conviction which rests on a mistaken identification is a gross miscarriage of justice. He also cites numerous Illinois cases which in effect hold that where the entire record raises a reasonable doubt as to the identification

239

of the defendant a guilty verdict will not be permitted to stand. In most of the cases cited, the defendant introduced an alibi defense which was corroborated by other witnesses. The defendant in the instant case did not produce any witnesses in support of his alibi although he testified that on that evening he met a girl with whom he worked, he went to a drugstore and to a pool hall. Later he stopped to get a hamburger and a shake. He next went to a tavern and there he was talking to the crowd. There he talked to a person wearing a long army coat who was called "Lonnie." Thereafter he went to another lounge and there met another girl he knew. He remained there about one and one-half hours and next went to a laundromat where he sat for twenty or twenty-five minutes while he talked to one Evelyn. He then proceeded to another tavern where he had more to drink and danced. He danced with a girl who was with his friend, Robert Moore. When he left the tavern, he went to the Music Room at 50th and Cottage Grove Avenue. He got home about 2:30 to 3:00 in the morning. He produced none of the persons he purportedly met or knew in support of his alibi.

The evidence by the State was most convincing. The group of young men was seen as they crossed in front of the car in which the State's witnesses were sitting. At that time the headlights of the automobile were on and the fluorescent street lights at the four corners of the intersection were on. There can be no doubt that defendant was seen as he crossed in front of the car by the car headlights. The view by Simmons and Macon at the time of the shooting was not obstructed. They were only a short distance from the defendant. The witness Simmons testified that he saw the defendant very clearly and was staring at the defendant.

In People v. Williams, 17 Ill2d 193, 201, 161 NE2d 295, the court said regarding an unsupported alibi:

"Without supporting evidence or testimony, the claim of alibi can be given little weight and its worth was dependent upon the credibility of defendant as a witness. In making such determination, it is proper to consider his interest and the extent to which he is corroborated or contradicted by other facts or circumstances in evidence."

██ It is the province of the trial judge in the bench trial to decide the credibility of the witnesses and the weight to be given their testimony and his decision will not be reversed unless it is palpably erroneous. People v. Boney, 28 Ill2d 505, 192 NE2d 920.

The trial judge at the conclusion of the case said the following:

"The testimony showed that the defendant who was clearly identified without any question in the court's mind, without cause shot this boy, and after taking the first shot stepped up further for two more shots."

██ We agree with the statement of the trial judge that the evidence as to identification was clear and convincing and we conclude that the defendant's guilt was established beyond a reasonable doubt.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.