People of the State of Illinois, Plaintiff-Appellee, v. Fred Cook, Jr., Defendant-Appellant.

Gen. No. 52,727.

First District, Fourth Division.

July 23, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Edward Stasukaitis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSES CHARGED

Robbery. Ill Rev Stats (1965), c 38, § 18–1. Armed Robbery. Ill Rev Stats (1965), c 38, § 18–2.

DEFENSE AT TRIAL

Alibi.

JUDGMENT

After a bench trial, defendant was found guilty of armed robbery and sentenced to a term of 3 to 7 years.

POINTS RAISED ON APPEAL

(1) The method of identification of defendant was improper and highly prejudicial to defendant.

(2) Defendant was not proven guilty beyond a reasonable doubt.

EVIDENCE

Mrs. Emily Kuldanek, for the State

At about 11:30 p. m. on April 13, 1967, she returned home by cab from a dinner engagement. She alighted from the cab at the house next to her own and proceeded home. As she approached her house, she noticed a man walking toward her. When she arrived at her front stairs, the man, who was then three or four feet away, said, "I'm going to take your money." She ran screaming up the front stairs and rang the doorbell with her right

233

hand. The man pursued and started pulling her purse, which was held on her left arm. After a struggle, the man got the purse and ran away with it. At that moment, her husband and her brother came out of the door and began chasing the man. Neighbors joined in pursuit, but the man got away.

She lives on a block where there is a streetlight on each corner and one in the middle of the block. The lighting conditions were very good. The man who robbed her was wearing a ¾-length black leather coat, dark slacks, and dark shoes. He held a shiny object in his right hand which was several inches long, but she could not tell if it was a weapon.

She went to the police station that night and talked to Officers Stewart and Wiser. About an hour and a half later, she was taken to Cook County Hospital where she saw the man who robbed her lying on a cot, with a policeman standing nearby. She had been told earlier that the police had shot the man she was to view. That night, the purse which had been taken from her was returned to her at the police station by Officer Wiser.

She identified defendant in court as the man who had robbed her.

Police Officer Richard Wiser, for the State

At about 11:30 p. m., on April 13, 1967, he and his partner, Officer William Stewart, were cruising in an unmarked car in the neighborhood of Mrs. Kuldanek's home, when they saw a man run over a railroad embankment toward them and almost into their car. He was wearing a ¾-length leather jacket and dark pants, and was carrying a purse in his left hand and a nickel-plated revolver in his right. Wiser and his partner got out of the car and ordered the man to stop. When the order was disobeyed, the two policemen chased him down a T-alley and fired several warning shots. Wiser got separated from his partner and for about 40 seconds he lost sight

of the man they were chasing. Then he saw defendant running out of a gangway, heard some shots, and saw defendant fall. He observed defendant, who was shot twice, lying in the street with the revolver by his side.

He recovered the purse and took it to the police station where he inventoried it, and then returned it to the owner, Mrs. Kuldanek.

Police Officer William Stewart, for the State

(His testimony was substantially the same as that of his partner, Officer Wiser.) When the chase started, Stewart ordered the man to halt and, when he did not do so, he fired two warning shots. The man dropped the purse and went over an eight-foot-high fence. The witness couldn't get over the fence, so he fired another warning shot. The man turned and pointed his gun at the witness, who then fired two shots, and defendant fell. (He fired five shots altogether.) Officer Wiser arrived, and both the purse and gun were recovered.

He returned to the police station where he met Mrs. Kuldanek. About an hour and a half later, he went with her to the hospital. On the way to the hospital, he told her he had shot the man who he thought had taken her purse. In the presence of a police officer assigned to the hospital, Officer Wiser, the witness, and hospital personnel, Mrs. Kuldanek identified defendant, lying on a cot, as the man who robbed her.

Fred Cook, defendant, on his own behalf

On the night of April 13, 1967, he spent about two and one-half hours at a lounge called Blue Bahama, located at Ogden and Avers. He knew everyone in the lounge and spent the time with a friend named Killer Brown and a girl named Dorothy. He left the lounge about 11:00 p. m. At about 11:30 p. m., he was walking to a restaurant in the 2100 block of South Central Park, when he heard some shots. He was hit in the back of the arm and fell to the ground. The policemen ran up and emptied his pockets.

235

He was then taken to County Hospital, and was there for three hours before they operated on him. He was conscious but did not see Mrs. Kuldanek there. The first time he saw her was in Felony Court when they bound him over to the grand jury. At that time she said she thought he was the man and then she said she was positive he was the one. He never had a chance to say a thing.

He denied owning a gun, or ever having seen the one which was admitted in evidence until he came to court that day.

OPINION

(1) Defendant contends that the circumstances of his identification at the hospital were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process, and that, as a result, the in-court identification by Mrs. Kuldanek was so highly prejudicial as to deprive him of a fair trial.

■ ■ In Stovall v. Denno, 388 US 293, it was held that a confrontation between a victim and an accused, within the totality of the circumstances surrounding it, may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law; and that an in-court identification based on such a confrontation is therefore inadmissible. See People v. Moore, 104 Ill App2d 343, 244 NE2d 337. Thus, to attack the admissibility of an in-court identification, a defendant must show that the circumstances of the pretrial identification fell within this rule. See People v. Nelson, 40 Ill2d 146, 150, 238 NE2d 378; and People v. McMath, 104 Ill App2d 302, 244 NE2d 330. Where a defendant does present sufficient evidence to establish the unfairness of the pretrial identification confrontation, an in-court identification may nevertheless be admissible if it is shown, by clear and convincing evidence, that the courtroom identification had an independent origin, arising from an earlier uninfluenced observation of the de-

fendant. See People v. Blumenshine, 42 Ill2d 508, 250 NE 2d 152; and People v. McMath, supra.

During direct examination, Mrs. Kuldanek described the man who took her purse, and then positively identified defendant as that man. It was brought out, on cross-examination, that she had met and talked with the arresting officers. During the course of the conversation, the officers said they had shot a man, who might have been the robber, and they took her to the hospital to view him an hour and a half after the robbery. There she saw defendant lying on a cot, in the presence of the arresting officers, the hospital police officer, and the hospital personnel, and identified him as her robber.

■ The facts and circumstances of this hospital identification may well have been unnecessarily suggestive. Stovall v. Denno, supra; Palmer v. Peyton, 359 F2d 199; People v. Ballott, 20 NY2d 600, 286 NYS2d 1, 233 NE2d 103. The practice of one-man "showups," when not necessary, is condemned as being grossly suggestive, even though such practice may be justified under some circumstances. Stovall v. Denno, supra. Here, defendant had been shot, but there appeared to have been no fear for his survival since the bullet was not removed for at least another hour and a half. It also seems highly probable that a lineup could have been arranged for a later time without much concern over deterioration of the victim's memory. Defendant points out, too, that there was no urgency in the indentification to avoid a needless detention of defendant.

Mrs. Kuldanek, however, had previously observed defendant at the time of the crime and had been able to give a thorough description of him. Her unshaken testimony was that she had observed defendant as she left the cab and watched him approach to a distance of three feet. He followed her up the front stairs of her house, and they were face to face as they struggled for her purse.

She also followed him as he fled the scene. The street was well lighted, and she was able to see him clearly. There is no evidence of any failure of the victim to identify defendant when given an opportunity to do so, and she did not make any conflicting identification. Not to be overlooked in this case, also, is the strong corroborating testimony of the two police officers who recovered Mrs. Kuldanek's purse from the possession of defendant very shortly after the robbery. See People v. Bey, 42 Ill2d 139, 144, 246 NE2d 287. These facts convincingly disclose an uninfluenced observation of defendant, prior to and independent of the showup, adequate to serve as the basis for the in-court identification.

Our decision on this point is, we believe, within the interpretation given Stovall by the Illinois Supreme Court. See People v. Nelson, 40 Ill2d 146, 151, 152, 238 NE2d 378, where the court said:

> The defendant's argument flies in the face of the record which clearly shows that the defendant was identified as the purchaser *independently of and uninfluenced by any viewing at the attempted lineup.* . . . It is plain that the identification of the defendant could be said to have been established *apart from and independent of the attempted lineup.* (Emphasis supplied.)

See also People v. Brown, 20 NY2d 238, 282 NYS2d 497, 229 NE2d 192.

In this regard, the cases of People v. Speck, 41 Ill2d 177, 192–193, 242 NE2d 208, and People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152, are important. The Speck case held that in a hospital identification, not significantly different from the one in the case before us, there was nothing fundamentally unfair in the totality of the circumstances because of the witness' prior opportunity to observe the killer at the time of the murders in question. Later, in the Blumenshine case, the court,

citing Speck, reemphasized this point as one of the circumstances which would negative the due process aspects of an otherwise unfair viewing of a suspect alone.

In our view, it should make no difference whether an identification procedure is or is not unnecessarily suggestive so long as the record clearly shows a prior observation of defendant sufficient to serve as an independent origin for the in-court identification. People v. Blumenshine, supra; and People v. McMath, 104 Ill App2d 302, 312–313, 244 NE2d 330. The ability of a witness-victim to identify his attacker cannot reasonably be said to have been erased from his mind simply because a policeman may improperly suggest that a suspect is, indeed, the one the victim thought he was.*

This conclusion finds strong support in the Supreme Court's recent decision in Blumenshine, supra. There the court found a police station confrontation to have been improperly suggestive. Unlike the situation disclosed by the record now before us, however, the court found the Blumenshine record inadequate to permit "an

---

* Suppose that a woman is robbed by her own brother whom she has seen every day for many years; that the police apprehend him and then conduct an unnecessarily suggestive showup at which the victim identifies him as her robber. Would it make any sense to say that her later courtroom identification should be inadmissible because of the improper pretrial identification procedure? We think not. Nor do we believe that Stovall requires any such result, since the opinion in that case referred the courts to "the totality of the circumstances" in reaching a decision on this issue. Obviously, very few cases would be as clear as the one hypothesized in this footnote. We mean only to point up that a prior independent origin of a witness' ability to identify the accused can furnish insulation against an "unnecessarily suggestive" confrontation to prevent its being "conducive to irreparable mistaken identification" (Stovall, supra, page 302), and may thus be available to overcome completely the defect in a courtroom identification otherwise arising from an unfair identification confrontation in the interim between crime and trial.

239

'informed judgment' as to whether the witnesses' identifications of the appellant were based on observations independent of and uninfluenced by the improper identification proceedings at the police station." The court also noted that, apart from the identification testimony, "no substantial evidence was presented by the State to connect the appellant with the offense." Here, too, our record is very different, as we have pointed out, in regard to the police recovery of the victim's purse from defendant's possession as he was fleeing. The record in Blumenshine being inadequate to permit decision on the point, the court vacated the judgment and returned the case to the trial court for a hearing as to the independent origin of the witnesses' in-court identifications. If, at such a hearing, the identifications are shown to have been independent of the improper police station confrontation, the trial court, under the Supreme Court's directions, would then enter a new judgment reinstating the conviction. In that event, the record in Blumenshine, and the essence of the decision in that case, would coincide with what we found to exist in McMath, supra, namely, an unfairly suggestive police station identification, but with the in-court identification being admissible as having its origin in an opportunity to observe which was prior to and independent of the improperly staged identification confrontation.

█ The record now before us is, in our opinion, more than adequate to establish the original opportunity of the identifying witness to observe her attacker at the time of the crime. We find, therefore, that this prior uninfluenced observation constituted a sufficiently independent origin to support her in-court identification.

█ (2) Defendant also contends that, in light of the circumstances of the identification and his alibi defense, he was not proven guilty beyond a reasonable doubt. We think he was. Defendant first claims that his identification was doubtful, vague, and uncertain; that

in the excitement of the struggle for the purse, Mrs. Kuldanek could not have had a good look at him. He also suggests that she had poor eyesight because, before identifying defendant positively in court, she said, "I can't see very good from here" [the witness stand]. These suggestions are directly contradicted by her careful and unshaken testimony. It is true that where a conviction rests upon an identification which is doubtful, vague, and uncertain, it will be reversed. People v. Gardner, 35 Ill2d 564, 221 NE2d 232; People v. McGee, 21 Ill 2d 440, 173 NE2d 434; People v. Gooden, 403 Ill 455, 86 NE2d 198. This is ultimately a question for the trier of fact, however, whose duty it is to consider contradictory testimony, and to determine the credibility of the witnesses, and the weight to be given their evidence. People v. Coulson, 13 Ill2d 290, 149 NE2d 96; People v. Kirilenko, 1 Ill2d 90, 115 NE2d 297. We have examined the record and find more than adequate identification evidence to establish defendant's guilt beyond a reasonable doubt.

■■ Defendant also claims that his alibi testimony was sufficient to raise a reasonable doubt of his guilt. He argues correctly that evidence of alibi cannot be disregarded where the only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime charged, and where the entire record reveals reasonable doubt of guilt because of an uncertain identification. People v. Gooden, 403 Ill 455, 86 NE2d 198; People v. McGee, 21 Ill2d 440, 173 NE2d 434; People v. Gardner, 35 Ill2d 564, 221 NE2d 232. However, the record here shows that both the strong circumstantial evidence introduced by the police and the positive identification testimony of the victim, link defendant to the crime. On the other hand, defendant offered no corroboration for his alibi and could not entirely account for the circumstances of his arrest. A defendant's unsupported alibi testimony has the inherent weak-

■

ness of being dependent upon his own credibility despite his obvious interest in the outcome of the case. People v. Sutton, 110 Ill App2d 232, 249 NE2d 215; People v. Williams, 17 Ill2d 193, 200–201, 161 NE2d 295. This, also, is essentially a question for the trier of fact, and the trial judge did not believe defendant in this instance. We can find no basis in the record to disturb his decision.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and McNAMARA, J., concur.