(No 39010.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN BEY, Plaintiff in Error.

*Opinion filed March 27, 1969.*

WARD, J., took no part.

PETER BOZNOS, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KIS-SANE and THOMAS J. IMMEL, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Ben Bey, seeks reversal of a Cook County circuit court judgment entered upon a jury verdict finding him guilty of burglary. He was sentenced to a term of 10 to 20 years imprisonment to be served concurrently with the sentence imposed in another case.

The indictment upon which this conviction occurred, No. 61-1382, was returned May 12, 1961. It charged that defendant entered the dwelling of Sandra Dragisic on April 30 and stole two purses belonging to Miss Dragisic and Janet Horvath and specifically described the contents of the purses.

On that morning Miss Dragisic and her roommate, Sharon Simpsen, were sleeping in the bedroom of the 2½-room apartment. The apartment door had been left unlocked so that their roommate, Miss Horvath, would not need to wake them when she returned from visiting friends who lived upstairs. About 4:30 A.M., Miss Dragisic was sud-

denly awakened by the movements of a man in her bed who was attempting to perform an act of cunnilingus. She succeeded in eluding the man's grasp following a struggle and threats of violence by the intruder. Her screams awakened Miss Simpsen who also began to cry out. The man sprang from the bed, leaning down at the foot, apparently to pick up something, and fled through the door to the living room. Miss Dragisic locked the bedroom door and called the police.

A search of the apartment was made when the police arrived, and the girls discovered two purses were missing. Officer Dahm found on the bedroom floor a button which did not belong to the girls and which they had not seen before. A statement was then taken from Miss Dragisic by the officers. That statement contains no mention of any "bumps" or abnormalities on defendant's head although Miss Dragisic later testified she told the officers of this at the time.

At 1:00 A.M. on May 2, 1961, Officers Foley and Preische were patrolling the area around the burglarized apartment. While parked in the mouth of the alley they observed a man crossing a vacant space between two buildings in the adjacent lot. They noted this man removing his jacket as he ran. The police then left their car to give chase and apprehended him. They then retraced the route defendant had taken while running and found two jackets under a car. The outer of these, a dark blue jacket with the bottom of three buttons missing, was identified by the officers at the trial as the jacket they saw defendant removing when they first saw him.

Defendant was then taken to the apartment building where Sandra Dragisic was summoned to a hallway to view defendant. Other residents of the building including Miss Simpsen and a Mr. Radner, whose apartment had been burglarized earlier that night, were also present. After

listening to defendant's voice and, apparently, feeling his head Miss Dragisic positively identified him as her assailant. The peculiar configurations of the intruder's head, noted by Miss Dragisic during her struggle and which were partially responsible for her identification of defendant, were explained by him as the result of a skull fracture caused when he was hit on the head by a golf club. Miss Simpsen, who apparently had little, if any, physical contact with the assailant was unable to identify defendant.

Numerous errors are alleged to have occurred; it is urged that the circumstances surrounding Miss Dragisic's initial identification of defendant were so unnecessarily suggestive and conducive to irreparable mistaken identification that defendant was denied due process under the standards of *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. Whether due process was denied under *Stovall* depends on the "totality of the circumstances surrounding" identification. (388 U.S. at 302, 18 L. Ed. 2d at 1206, 87 S. Ct. at 1972.) While this was a pre-*Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and pre-*Gilbert,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, trial so that the absence of counsel at the time of defendant's initial identification does not preclude admission of the identification evidence, defendant is, under *Stovall,* entitled to a determination whether due process requirements were violated in the identification circumstances here present. We think they were not, although, concededly, those circumstances were substantially short of ideal. (See *People* v. *Gardner,* 35 Ill.2d 564, 572.) There are, however, several circumstances distinguishing the identification procedure here from that in *Stovall.* The witness here did not depend upon visual observation as the only or even major means of identification. While Miss Dragisic indicated some confusion as to whether she felt defendant's head on May 2, it is clear that the visible "bumps" were a major factor in

her identification, and that this peculiarity coupled with her recognition of defendant's voice weighed far more heavily in her decision than did her visual observation.

It should be noted also that, in contradistinction to *Stovall* where the challenged identification was the principal proof of guilt, there is here substantial, independent corroborating evidence in the form of the button found in the girls' apartment.

A police microanalyist testified that he compared the button found in the apartment with the remaining buttons on the coat found under a parked car near where defendant was arrested. He also compared the thread hanging from the button with that attached to the area on the coat where the button was missing. His conclusions were that the buttons were similar in shape, design, physical size and color. The threads were similar in respect to color as were the number of bundles of fiber constituting the thread and the direction of the twist of the thread. In his opinion "the button came from that coat." While defendant complains of the failure of this witness to make a chemical analysis of the button and thread for purposes of comparison with an analysis of the thread and remaining buttons on the coat, the witness testified the microscopic examination was the "best" test of similarity of these objects. It seems clear that the absence of a chemical analysis affects only the probative value, and not the admissibility of this expert testimony. See *People* v. *Green*, 28 Ill.2d 286; *People* v. *Jennings*, 252 Ill. 534, 549-52.

Also urged as error is defendant's contention that while the indictment charged burglary with intent to commit larceny, he was tried for either an assault or attempt to rape, thereby depriving him of his constitutional right to be tried on the charge in the indictment, to know the nature of the accusation, and not to be exposed to double jeopardy. It is true that much of the evidence by the State related to the attack on Miss Dragisic and that comparatively little men-

tion is made of theft of the purses. We cannot agree, however, with the defendant that his constitutional guarantees were thereby abrogated, for there is no indication that defendant was hampered in preparing his defense. *Berger* v. *United States,* 295 U.S. 78, 79 L. Ed. 1314, 55 S. Ct. 629.

The essence of defendant's complaint on this score is that the State failed to prove his intent to commit larceny, unduly emphasized the sexual attack and thereby prejudiced him in the eyes of the jurors, resulting in his conviction of an unproved offense. This argument overlooks several factors: one is that there is no indication that defendant knew, prior to entering the apartment, that three young girls resided there; a second is that it seems unlikely that a burglar, when confronted with two screaming, hysterical girls in a darkened room at 4:30 A.M. would commence searching for purses when his efforts to obtain sexual gratification were frustrated. Much more reasonable seems to be the import of the testimony that defendant had entered intending to steal, found the purses, then determined to attack the girls, and, when violently opposed in this effort, picked up the purses and fled. We find the proof adequate to establish the larcenous intent. See *People* v. *Weiss,* 367 Ill. 580.

Nor do we find proof of the sexual assault prejudicial. That evidence was inextricably interwoven with the burglary charge and formed the basis for Miss Dragisic's identification testimony. Her prior opportunity to feel his head and hear his voice was essential to an adequate explanation of her means of identification. Even though involving proof of additional criminal activity, this evidence is clearly admissible. *People* v. *Peto,* 38 Ill.2d 45, 51; *People* v. *Lawler,* 23 Ill.2d 38.

On direct examination defendant testified to his conviction of a felony in 1956. On cross-examination the State inquired: "Is this the only felony conviction against you?" A defense objection resulted in a bench-counsel conference outside the presence of the jury in the course of which de-

fense counsel pointed out that defendant had been convicted of burglary in 1961, but that the conviction was being appealed. The objection was overruled, and defendant answered that he had again been convicted of burglary in 1961. Two complaints were then and are now directed at this procedure: that it was error to permit proof of a conviction then on appeal; and that, in any event, such proof could be made only by introduction of an authenticated copy of the record.

The statutory provision allowing prior convictions to be shown for the purpose of affecting the witness's credibility makes no mention of convictions on appeal. (Ill. Rev. Stat. 1965, ch. 38, par. 155—1.) Even in this day of virtually automatic appeals, the judgment of the trial court is still a determination of guilt which stands until it is reversed. In *People ex rel. Keenan* v. *McGuane,* 13 Ill.2d 520, 537, we concluded that "the provisions of the Illinois constitution and statutes effecting a vacancy in public office upon the conviction of the incumbent of an infamous crime refer to the conviction in a trial court", and there held the vacancy existed even though the conviction creating the vacancy was on appeal. We note that a number of our appellate courts have thought *Keenan* controlling on the issue here and permitted the introduction of the record of conviction of infamous crimes even though the conviction was on appeal. (*People* v. *Scott,* 89 Ill. App. 2d 413, 414; *People* v. *Spears,* 83 Ill. App. 2d 18, 23; *People* v. *Webb,* 80 Ill. App. 2d 445, 451-52.) We therefore hold that admissibility for impeachment purposes of proof of a prior conviction is unaffected by the pending appeal of that conviction until such time as the invalidity of such conviction has been established. (See *People* v. *Shook,* 35 Ill.2d 597.) Our holding here does not, of course, hinder defendant from establishing that an appeal from the impeaching conviction is in process.

It has been the consistent holding of this court that proof of the prior conviction of an infamous crime to impeach the

defendant's credibility shall be by the record of conviction or an authenticated copy. (*People* v. *McCrimmon,* 37 Ill.2d 40, 45; *People* v. *Flynn,* 8 Ill.2d 116, 120.) The basis for this rule is the prejudice to a defendant who is compelled to testify before a jury as to his prior convictions. *Flynn* at 121; *People* v. *Kosearas,* 408 Ill. 179. 181.

In *People* v. *Nastasio,* 30 Ill.2d 51, however, we refused to hold reversible error occurred in the cross-examination of a defendant with respect to his prior convictions where, on direct examination, he admitted his conviction of certain crimes and stated that he had never been convicted of any crime other than those he mentioned. In such circumstances the defendant had already willingly damaged himself by admitting some prior convictions, and thus opened the door to impeachment of his testimony that he had been convicted of no other offenses. Although *Nastasio,* and the cases cited therein, dealt with instances where the defendant had affirmatively stated he had no convictions other than those mentioned, the rationale of those cases has some relevance here. Defendant voluntarily testified to his 1956 conviction. Even though he did not affirmatively state that no other convictions existed, it probably may fairly be said that he hoped the jury might infer that was his only conviction of an infamous crime, for testimony as to one conviction seemingly implies the absence of others. Accordingly, we believe the ruling of the trial court is sustainable on the basis of *Nastasio's* rationale, even though proof of the second conviction by introduction of the record would have been preferable to the method here employed. There is, however, an additional reason for affirmance here. The jury had already been informed by defendant of the one burglary conviction. Under these circumstances it is our opinion that the controversial cross-examination resulting in disclosure of the second conviction does not have the prejudicial impact upon the jury which would exist were there no earlier proof of other criminal conduct. In short, we believe cross-examination re-

garding the second conviction, even though held erroneous, would not, in the context in which it here occurred, constitute reversible error.

Although the defendant has alleged other trial errors, it suffices to say that we have considered them and find that they in no way deprived him of due process and a fair trial.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.