(No. 42941.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN L. FINCH, Appellant.

*Opinion filed Dec. 4, 1970.—Rehearing denied Jan. 27, 1971.*

Schaefer, J., dissenting.

PRICE, CUSHMAN, KECK & MAHIN, of Chicago, (JEFFREY G. LISS and PAUL D. BROWN, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and ARTHUR L. BELKIND, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendant, John L. Finch, was convicted of unlawful sale of a narcotic drug (Ill. Rev. Stat. 1967, ch. 38, par. 22—3) after a bench trial in the circuit court of Cook County and sentenced to a term of not less than 10 nor more than 20 years. Contending that constitutional questions are involved, the defendant has appealed directly to this court. See Rule 603. 43 Ill.2d R. 603.

The evidence shows that on April 30, 1968, at about 4:30 A.M. Officers Arnold and Westbrook of the Chicago Police Department met with Willie Miller, a special employee of the police department, in the vicinity of 43rd and Indiana in Chicago to prepare Miller to make a controlled purchase of narcotics. A "strip search" in the automobile insured that Miller was not in possession of narcotics and he was given $15 in pre-recorded funds. Officer Arnold and Miller proceeded to the vicinity of 312 East 43rd Street, and Miller looked into the window of the O.K. Restaurant at that address. A man came from the restaurant and he and Miller began a conversation. The man was identified at trial by Miller and Officer Arnold as the defendant, Finch. Miller testified that he told the defendant that he wanted to purchase some narcotics and that Finch told him he would have to return with the narcotics. Miller said that he gave the defendant the $15 dollars of pre-recorded funds at that time. Officer Arnold, who was observing from an alleyway testified that he saw the hands of the defendant and Miller meet and it appeared that something was passed.

Miller and the defendant, according to the testimony of Miller, agreed to meet at the corner of 44th and Calumet.

Officer Arnold observed Miller proceed to the northwest corner of 44th and Calumet. Several minutes later the defendant emerged from an alleyway between Calumet and the adjacent street, South Park. The defendant walked to Miller and handed him a tin-foil package then walked back to the alleyway.

Officer Arnold said that he had seen the defendant leave the alleyway between Calumet and South Park and that after a brief meeting something appeared to pass between the defendant and Miller. Miller then came to where Arnold was standing and handed him a tin-foil package. Officer Arnold testified that he did not lose sight of Miller at any time from the time he and Miller parted near 312 East 43rd Street until Miller handed him the package. Officer Arnold opened the package and found that it contained a white powder. This was later shown to have been heroin. He and Officer Westbrook, he testified, then made an unsuccessful effort to apprehend the defendant but could not locate him.

An arrest warrant was subsequently issued for the defendant and he was arrested on May 9, 1968 at 7:20 A.M. at 43rd and Calumet. On this evidence the defendant was found guilty of the unlawful sale of a narcotics drug.

The defendant contends that his constitutional rights were violated in that (1) the identification of the defendant at trial by Willie Miller was tainted by an improper pretrial confrontation; (2) the in-court identification of the defendant was itself so unnecessarily suggestive that it violated his right of due process; (3) the trial court's refusal to require Miller to disclose his address in open court violated his right to confront the witness; and (4) the failure of the trial court to quash the arrest warrant, which had been issued without probable cause, violated his assurance against unreasonable seizures.

The defendant first complains that the State's witness, Willie Miller, was present in court the day before trial when some preliminary motions in the case were being argued

before the court, and that the witness viewed the defendant without his knowledge. He argues that this viewing constituted a pre-trial confrontation, after indictment, which under United States Supreme Court holdings in *United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, required that he have been given notice of the intended confrontation and the opportunity to have his attorney present. This secret and improper exhibition of the defendant to the State's witness one day before trial tainted the witness's in-court identification of the defendant, and accordingly, he says, the State witness's in-court identification was improperly permitted. Under the circumstances it must be presumed, he contends, that the in-court identification was the product of the illegal prior confrontation and that there could not reasonably be an independent source for the witness's in-court identification.

The State declares that it has no knowledge of any pre-trial viewing and that if there was one as described, it was completely unaware of it. Further, even if there had been such a viewing the record here clearly shows that the witness's in-court identification of defendant had an independent source, unconnected with and uninfluenced by any pretrial confrontation.

The contention that there was such a pretrial viewing is based on the following, which occurred during the cross-examination of Willie Miller:

"Q. [Defense Counsel] : Now when did you see Mr. Finch next [after the alleged transaction on April 30, 1968]?

A. It was yesterday.

Q. Yesterday?

A. Yes.

Q. In this courtroom?

A. Yes."

The defendant concludes from this, that unknown to

him and his trial counsel, he was surreptitiously viewed by Miller at the prompting of the State for purposes of identification while he was in court the day before trial on pretrial motions. However, there is absolutely nothing to suggest that Miller's seeing the defendant was because of anying other than a chance encounter. There is no evidence that the State knew of the incident, much less inspired it. The defendant's trial attorney's motion to interview the witness prior to trial had been granted and for all one can tell from the record the incident may have occurred because of this. The trial attorney did not evince surprise or alarm at Miller's reply to his question, nor did he object to any of Miller's in-court identification testimony. Finally, there is nothing to suggest that Miller's identification of the defendant on the day before trial was anything but a spontaneous recognition of a person known by him.

We do not find the defendant's citation of *Mason* v. *United States* (D.C. cir. 1969), 414 F.2d 1176, persuasive. In *Mason* the court held that a confrontation at a preliminary hearing entitled the defendant under *Wade* and *Gilbert* to have his counsel present. However, there the police had arranged for the witness to be present at the defendant's preliminary hearing for the purpose of identifying the defendant. We need not examine the *Mason* holding that an identification made at the defendant's preliminary hearing was within the command of *Wade* and *Gilbert,* for the factual situation here is obviously distinguishable. There is no evidence, as we have said, that Miller was in the courtroom at the request of the State, or even with its knowledge.

Too, the record presents strong evidence of an independent basis for the witness's in-court identification. Immediately prior to trial the defendant had moved to suppress the anticipated identification testimony of the State's witness charging that there was no basis for a courtroom identification. The court granted a hearing to ascertain whether there was a basis. At the hearing, which was conducted in

the absence of the defendant, the witness testified that he had known the defendant for four months before the crime charged; he described the physical characteristics of the defendant; he described the neighborhood in which the crime had occurred; and he stated that at the time the defendant made the sale to him he had a good opportunity to observe the defendant under well-lighted conditions.

Considering this, we believe that the record establishes an independent source for the witness's in-court identification. See *People* v. *Watkins,* Docket No. 42759; *People* v. *Harris,* 46 Ill.2d 395; *People* v. *Triplett,* 46 Ill.2d 109; *People* v. *McMath,* 45 Ill.2d 33; *People* v. *Bey,* 42 Ill.2d 139; *People* v. *Blumenshine,* 42 Ill.2d 508.

Relying on *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, the defendant also argues the in-court identification was so inherently suggestive that he was denied due process of law. It is asserted that *Stovall* disapproved the practice of showing suspects singly to witnesses for identification before trial, because the court recognized that such procedures are inherently suggestive and conducive to irreparably mistaken identification. It is even more suggestive, the defendant says, and more conducive to irreparably mistaken identification to exhibit the accused to the witness for the first time at trial when the accused, sitting at the defense table with his attorney, is so conspicuous. He concludes, especially under circumstances where the defendant insists that he has never seen the witness, that the court should have granted his request for a line-up in the courtroom to protect him against misidentification.

Here the defendant's counsel did not object to the procedure employed at the trial in identifying the defendant, although he did request prior to trial that a line-up identification be employed. However, no authority is offered to support the position that the defendant was entitled upon his request at trial to an identification from a line-up. The

case authority that does exist is contrary to the contention. (See, *e.g., United States* v. *Moss,* (3d cir. 1969), 410 F.2d 386; *Moore* v. *State of Texas* (Tex. Crim., 1968), 424 S.W.2d 443; *State* v. *Brown,* (76 Wash. 352, 458 P.2d 165.) Also, as we have observed, there was clearly sufficient evidence of an independent basis for the witness's identification of the defendant. In *People* v. *Johnson,* 45 Ill.2d 38, this court held that the burden of proof is upon the defendant to establish that the identification procedures were so suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

His conviction should be reversed, the defendant also argues, because the trial court refused to require the "special employee" to disclose his home address in open court. He contends, citing *Smith* v. *Illinois,* 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748, that the trial court thus deprived him of his right to confront the witness against him in violation of his constitutionally guaranteed right.

The Supreme Court in the *Smith* case, which also involved a sale of narcotics to an informer, held that the failure to require disclosure of the true name and residence address of the principal prosecution witness was a violation of the defendant's right to be confronted with the witnesses against him as assured by article VI of the United States constitution and made binding upon the States by article XIV.

In a concurring opinion in *Smith,* in which Justice Marshall joined, Justice White stated: "In *Alford* v. *United States,* 282 U.S. 687, 694, 75 L. Ed. 624, 629, 51 S. Ct. 218 (1931), the Court recognized that questions which tend merely to harass, annoy or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to endanger the personal safety of the witness." Justice White expressed his understanding that this view was not inconsistent with

the majority opinion. The Court of Appeals for the 7th Circuit in *United States* v. *Varelli,* 407 F.2d 735, 750, relying on the concurring opinion in *Smith,* observed: "Although there is a right to cross-examine a witness as to his residence, it is not unlimited." And, "But, there is no absolute right to the exact address of the witness where his safety is in doubt."

The witness had provided his business address and the unusual circumstances developed from the request for Miller's home address are shown by the following excerpt from the record.

"CROSS EXAMINATION : By defense counsel.

Q. Mr. Miller, what is your age?

A. Twenty-seven.

Q. What is your address?

A. I can't give you my address.

Q. I am asking you, what is your address, sir?

PROSECUTOR: Objection.

THE COURT: Will you step up, please. We had a discussion about this yesterday, did we not?

DEFENSE COUNSEL: We did, Your Honor.

THE COURT: And at that time, as I recall, the State advanced a reason for not wanting the witness to disclose his address, was because for the obvious reason, to protect this witness, and as I recall, Mr. Toomin, you suggested to the Court that the only reason you wanted it was to try to, for purposes of impeachment, nobody else would obtain the address, you would give it to the chief investigator.

DEFENSE COUNSEL: That's right, since that time, however, I have had occasion to refresh my memory with the case of Fleming Smith vs. the State of Illinois, and I am sure the Court is well aware of that decision.

THE COURT: This is the decision that disturbs this Court.

DEFENSE COUNSEL: Right, and I feel that I need give no reason.

* * *

THE COURT: I happen to be familiar with the case.

DEFENSE COUNSEL: I am not required by this case to give any reason to the Court for my inquiry.

THE COURT: No, that is true. The case holds that you may be able to develop something on cross-examination and that you are not required to give the precise reason because one never knows what cross-examination would lead to, but the only reason you suggested that you wanted his address is to determine if he has a record, so that you could impeach this witness.

DEFENSE COUNSEL: That was the only reason I stated yesterday. I am not going to be bound by that. I am stating that, in accordance with the ruling of the Supreme Court, I, by law, need not state any reason, and making the inquiry of this individual at this time to do what I may well do with it. I don't know what 1 will do with it at this time. I have certain ideas and theories but I do make the request in good faith and ask the question in good faith.

THE COURT: The Court doesn't doubt your veracity or integrity so please—what do you have to say about that, Mr. State's Attorney?

PROSECUTOR: I wonder if we can give this information to Mr. Toomin outside of the presence of the defendant.

THE COURT: Yes, as long as it is given to Defense Counsel. * * *.

PROSECUTOR: May we have a conference outside of the presence of the defendant?

THE COURT: Yes. Well, let's step aside for a moment. Mr. Reporter, you may come in, and Mr. Witness, you remain there.

434

(Whereupon the following proceedings were had among Court and counsel, in chambers, to-wit:)

THE COURT: Off the record.

(Whereupon an off-the-record discussion was had among Court and counsel in chambers, after which, the following proceedings were had in open court, to-wit:)

THE COURT: All right. Let's proceed. Mr. Toomin, you were cross-examining. What was the last question? (Whereupon the last question was read by the reporter.)

THE COURT: Mr. State's Attorney, please state for the record the reason for the objection.

PROSECUTOR: The nature of the charge involved, dealing in narcotics, danger to his life, the man has a private life to live, other people don't know about the nature of his activities, and he doesn't wish them to know, and for these reasons the State does object to having the man divulge his home address.

THE COURT: Well, the witness here in open court, this is a public trial, he has already been observed and the man has already given his business address. Is that correct, Mr. Miller?

THE WITNESS: That's right.

THE COURT: If, for the record, his home address need not be stated, if the witness would be good enough to write his address down and give it only to the attorney and to no one else—

THE WITNESS: (Indicating)

THE COURT: Let the record show that in response to the question about the home address, the Court is permitting the witness to write his true address on a slip of paper and give it to the attorney for the defendant for his exclusive use. With that now, Mr. Toomin, will you continue with your cross-examination?

PROSECUTOR: Let the record reflect he has written it out and I turned it over to the defense counsel, Mr. Toomin.

DEFENSE COUNSEL: We acknowledge receipt. * * *.

DEFENSE COUNSEL: Q. Now. Mr. Miller, what is the place of your occupation or business? For whom do you work?

THE WITNESS: A. Russell Packing."

While the discussion in chambers between the court and counsel is not of record, it appears clear that the possible danger to the special employee was advanced by the State to the court and that this consideration was a reason for the court's not compelling the disclosure in the record of the address of the witness. The court upon resumption of the proceeding immediately asked the prosecutor to state for the record the reasons for his objection and the prosecutor at once referred to the nature of the charge and danger to the special employee's life. Adverting to the quoted colloquy, it is to be noted, too, that the court, when the question of Miller's address was presented and objection made, stated that the reason which had been advanced by the State in an earlier discussion for its objection was the safety of the witness. The discussion in chambers was unrecorded but we observe that the trial attorney for the defendant, who had cited and commented on the *Smith* case, heard whatever discussion the State may have offered to support its apprehension for Miller and upon the resumption of proceedings in court offered no protest that there was not adequate evidence to cause such an apprehension. In *Smith,* to quote Justice White: "Here the State gave no reasons justifying the refusal to answer a quite usual and proper question." (390 U.S. at 134, 19 L. Ed. 2d at 960.) Without expressing dissatisfaction and apparently accepting that an adequate basis for the court's ruling had been laid by the State, he at once resumed cross-examination without making any objection. (*Cf. United States* v. *Palermo* (7th cir. 1969), 410

F.2d 468, 472.) In addition, it can be said that the absence of any objection by counsel at that time under the circumstances operated as a waiver of the right to obtain unconditionally the home address of the witness. One certainly has the right to waive cross-examination and just as certainly he can waive an aid to cross-examination. We do not consider there has been a showing of reversible error.

There is the contention, too, that because the complaint upon which the arrest warrant was issued in the present case did not set forth probable cause the warrant should have been quashed. Since the arrest warrant was not quashed, all the subsequent proceedings were void, the defendant says, and that, therefore, his conviction should be reversed. He does not complain that there was any evidence produced by the arrest which was introduced against him; the complaint is that the arrest was improper.

Even if the assumption is made that the complaint and warrant were defective, we find no merit in the defendant's position. As we stated recently in *People* v. *Bliss,* 44 Ill.2d 363 at 369: "The general rule is that if a defendant is physically present before the court on an accusatory pleading, either because held in custody after arrest or because he has appeared in person after giving bail, the invalidity of the original arrest is immaterial, even though seasonably raised, as far as the jurisdiction of the court to proceed with the case is concerned (5 Am. Jur. 2d 796; 21 Am. Jur. 2d 401.) Due Process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. Accordingly it is held that the power of a court to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a forcible abduction. (*Frisbie* v. *Collins,* 342 U.S. 519, 522, 96 L. Ed. 541, 72 S. Ct. 509; *Ker* v. *Illinois,* 119 U.S 436, 444, 30 L. Ed. 421.) In the *Frisbie* case the Supreme Court stated that

there is nothing in the constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." See also *People* v. *Pardo, ante,* at p. 420.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

In my opinion the decision of the Supreme Court of the United States in *Smith* v. *Illinois* (1968), 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748, requires reversal of the judgment in this case. The prosecution did not suggest that the defendant's attorney had waived the objection that had occupied the attention of court and counsel over a two-day period. We should not be astute to find a waiver. Moreover, I do not know what is meant by turning over material "to the attorney for the defendant for his exclusive use," and I think that it is unfair to place an attorney under such an ambiguous restriction.