THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID L. BROWN, Defendant-Appellant.

(No. 54105;

First District—March 26, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Alan Sternberg, Shelvin Singer, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas A. De John, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

The defendant was indicted for robbery. He was found guilty after a bench trial and sentenced to a term of one to five years.

On appeal defendant makes two arguments. First, that the in-court identification of defendant should not have been admitted into evidence. Second, that the trial court erred in refusing to permit certain foundation questions preparatory to impeachment of the complaining witness.

The State presented two witnesses, the complaining witness, Alvin Dickson, and a Chicago Police Officer, James Batka.

Alvin Dickson testified that at approximately 9:00 P.M. on February 12, 1968, he left a bus at Stockton Drive and Armitage. He began to walk across the park when he was approached by three men. Defendant and another man stood directly in front of him and the third stood slightly behind them. The men asked for money and the witness refused to give it to them. Two of the men grabbed the witness' topcoat and pulled it over his head. The men then began hitting him about the face and stomach. One of the men struck him in the face and knocked off his glasses. He pulled free from his coat and began to run toward Stockton Drive. At Stockton Drive he stumbled and fell and defendant and one of the other men kicked and beat him until he lost consciousness. He stated that the area near Stockton Drive was brightly lighted and he was able clearly to see his attackers. He estimated that he was in contact with the men for about five minutes from the time they first approached him until he lost consciousness. The witness' wrist watch and billfold containing his Standard Oil credit card and other items were taken. He identified a State's exhibit as the Standard Oil credit card which was in his wallet when he was robbed. The witness stated that he particularly recalled a shock of hair which fell over defendant's face both at the time of the robbery and later when he was asked to identify defendant. He stated that he had never seen other people with this particular type of hair.

On May 14, 1968, the witness was telephoned by the police who asked him to come to the police station. When the witness arrived at the station he was taken by an officer to a cell occupied only by defendant and asked if he could identify him. The defendant rose and stood three or four feet away from him. After observing defendant for a few moments the witness identified him as one of the robbers.

Chicago Police Officer James Batka testified that on May 13, 1968, he arrested defendant and took him to the Sixth District station. Defendant's wallet was found to contain the Standard Oil credit card which was the State's exhibit identified by the complaining witness. After finding the card in defendant's possession the Officer contacted Mr. Dickson, the complaining witness.

Defendant testified in his own behalf. He stated that on February

12, 1968, he had not been in the vicinity of Stockton Drive and Armitage. Prior to his arrest on May 13, 1968, for a traffic violation he had never seen the complaining witness. He testified that he had found the credit card at a place which he could not recall, approximately ten days prior to his arrest.

On appeal defendant argues that the station house confrontation conducted by the police was so suggestive and conducive to mistake that it fatally tainted the in-court identification. As the Illinois Supreme Court indicated in *People v. Palmer* (1969), 41 Ill.2d 571; *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967, leaves a defendant free to make the argument that in instances of pre-indictment confrontation "the pretrial identification was so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process of law." Where an accused can support this claim the evidence of identification is rendered inadmissible and not simply affected as to credibility.

■■ However, if there was clearly sufficient evidence of a prior independent basis for the witness's identification, the in-court identification is admissible. (*People v. Finch* (1970), 47 Ill.2d 425; *People v. Cook* (1969), 113 Ill.App.2d 231 at 258, and *People v. Palmer* (1969), 41 Ill.2d 571.) In the case at bar the complaining witness' testimony indicates that at the time of the robbery he had adequate opportunity to observe his attackers. He was in contact with his assailants for approximately five minutes and part of this period was under bright light. Especially significant is the witness' recollection of defendant's peculiar shock of hair which the witness said was quite distinctive and which the witness stated he noticed both at the time of attack and when he identified defendant at the station. These facts convincingly disclose an uninfluenced observation of defendant, prior to and independent of the showup. It should also be noted that in contradistinction to *Stovall* where the challenged identification was the principal proof of guilt, there is here substantial, independent corroborating evidence in the form of the credit card found in the possession of defendant. (See *People v. Bey* (1969), 42 Ill.2d 139.) We conclude that the in-court identification testimony was admissible, and that defendant's due process rights were not violated.

■■ Defendant's second contention is that the court erred in refusing certain impeachment questions put to the complaining witness by the defense counsel. *People v. Dixon* (1963), 28 Ill.2d 122; *People v. Irish* (1966), 77 Ill.App.2d 67, and *People v. Whitehead* (1966), 35 Ill.2d 501 are cited in support of defendant's argument that the trial court, be-

cause of the lack of a transcript, improperly denied defendant the right to question the witness about previous testimony. Error is alleged to have occurred in the following ruling by the court:

"MR. RUTTENBERG (defense counsel):

Q. Now, do you remember being asked by Judge Zelezinski on or about the 26th of June, 1968, what happened on the night in question?

MR. FRIEDMAN (Assistant State's Attorney):

If the Court please, I would object again to the form of the questions in that the question assumes—forgetting the objection about the type of impeachment, the question assumes a fact he was asked—

The Court: This form of question I'll have to sustain the objection to."

Despite earlier references by court and counsel to the use of the transcript in the impeachment, it is clear that the court's ruling was founded on the form of the question. The record discloses that counsel was subsequently permitted to question the witness in detail about his prior testimony at the preliminary court hearing. The Court specifically stated that counsel would be allowed to ask the witness what his testimony had been and the transcript of the former testimony was not required for such examination. We conclude that defendant was not denied his right of cross-examination and that no error was committed.

Judgment affirmed.

ENGLISH, P. J., and DRUCKER, J., concur.