THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHELBY MILLER, Defendant-Appellant.

Third District No. 75-15

Opinion filed June 9, 1976.—Rehearing denied June 28, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

David DeDoncker, State's Attorney, of Rock Island (James Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Shelby Miller appeals from a conviction for armed robbery and aggravated battery, pursuant to which he was sentenced to a term of 4 to 8 years in the penitentiary. He was originally indicted for attempted murder, as well as armed robbery and aggravated battery. A jury found him guilty of the charges of armed robbery and aggravated battery but not of attempted murder. The charges arose out of an incident in which Willie Estes was shot and robbed of $81 while sitting in an automobile in Rock Island in the late evening of July 23, 1974.

On appeal in this court, defendant Miller claims he was denied a fair trial because of evidence concerning prior misdemeanor convictions and because of certain comments by the prosecutor in closing argument. He also asserts that the aggravated battery conviction must be vacated since it stemmed from the same conduct which produced the armed robbery conviction.

The record discloses that Estes testified that he was drinking at Woody's Clover Club on July 23, 1974, and left the premises with a man he did not know and in an automobile owned by that man. While he originally said that no one was with them, on redirect he testified they were also accompanied by a woman. The car was driven to a house where Estes' companions told him to wait while they entered the house. While Estes was waiting in the car, another man approached and told Estes to move over and produced a gun. As the man opened the door he shot Estes once in the side near the waist and told Estes to give him his wallet. Estes gave him his wallet and the robber left.

Estes then walked up to the house where his companions had entered and knocked on the door and it was answered by an occupant. He told the people that he had been shot and robbed, but then told them that he did not know who his assailant was. The man and woman who originally drove Estes to the house then drove him to the hospital. When he arrived there, Estes told police officers that a man he knew as "Shelby" had been the attacker.

After having been supplied the name and description given by the victim, the police went to defendant Miller's home but were there directed to the home of Miller's girlfriend nearby. They inquired if Miller was there, and Miller's girlfriend, Mary Race, said he was not. She did, however, allow the officers to search, and they found the defendant nude under Mary Race's bed.

At the trial defendant testified that he had been in the Race home since about 7 p.m. on the night in question and had gone to bed a little after 10

p.m. He said he hid under the bed when the police came because they had come once before when he and his girlfriend were arguing. The alibi which defendant presented was corroborated by his girlfriend, Mary Race, by defendant's sister, and by his 14-year-old step-niece.

Estes testified that he knew who Miller was, although they had never met formally and that he had drinks with Miller before. He said he knew him only by the name "Shelby" and not by "Redeye," the defendant's nickname. Defendant denied knowing Estes and stated that everyone called him by his nickname. Two men called for rebuttal by the State testified that they had seen both Miller and Estes in the presence of each other before at the Clover Club. Estes also explained his original statement to the people in the house to the effect that he did not know who shot him, by saying that he was afraid the people were part of a group, including the attacker who shot him, and that he might have been "set up." He also confirmed that he was confronted by his assailant whom he identified as Miller for almost 4 minutes and saw him clearly. He made a positive identification of Miller at the trial.

When officers checked the house where the incident occurred they found no one there, and no further investigation was made of the house or of the people who took Estes to the place. The clothing on the floor in the Race house which was put on by defendant after his arrest, did not match the description given by Estes. The gun, and Estes' wallet and money, were never recovered.

Defendant's first assignment of error relates to evidence of prior convictions which had been elicited during the trial. Defendant Miller on direct examination testified that he had never owned a gun. On cross-examination the prosecutor explored this statement, and Miller admitted that many years earlier he once had a shotgun, but that it belonged to a friend of his. On redirect questioning, Miller also admitted having been arrested a year prior, in connection with guns, but he said that the guns belonged to his brother-in-law. The State then, on recross, had Miller admit that he pleaded guilty to an unlawful use of weapons charge when he was with his brother-in-law, and that there were two weapons with them at the time. He then volunteered that he had also pleaded guilty to resisting arrest and to possession of marijuana, although no question was put to him with respect to such matters.

■■ Defendant argues that the eliciting of such information from him at the trial violated the longstanding principle enunciated in *People v. Gregory* (1961), 22 Ill. 2d 601, 603, 177 N.E.2d 120, to the effect that every defendant is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged, and that evidence of other offenses unrelated to the crime for which defendant is on trial is incompetent. There are exceptions to such rule including evidence

tending to show commission of other crimes by a defendant which could be admissible where it is relevant in proving the crime charged (*People v. Hall* (1967), 38 Ill. 2d 308, 315, 231 N.E.2d 416) and where it shows identity, design, motive, knowledge, or proximity to the crime in time or place. (*People v. Cage* (1966), 34 Ill. 2d 530, 533, 216 N.E.2d 805.) Evidence of prior crimes may also be used generally to impeach the credibility of the defendant when he has taken the witness stand. (*People v. Helm* (1968), 40 Ill. 2d 39, 45, 237 N.E.2d 433; Ill. Rev. Stat. 1975, ch. 38, par. 155—1.) Such convictions are shown by introducing the authenticated record and should involve convictions for infamous crimes.

Another exception to the rule, which is applicable in this case, is that the State has a right to cross-examine the defendant on matters raised in his direct testimony, in an attempt to explain, modify, discredit or contradict the direct testimony. As applied to the issue before us, this aspect of the adversary system, results in an exception that the State may cross-examine a defendant concerning his past criminal activities, within limits, when he testifies about those activities on direct questioning from his attorney. *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 500, 292 N.E.2d 387; *People v. Bey* (1969), 42 Ill. 2d 139, 147-48, 246 N.E.2d 287.

For the reason that evidence of a defendant's prior criminal record is usually irrelevant to his guilt or innocence of the crime for which he is being tried, yet at the same time might be highly prejudicial, any cross-examination in this area, even where defendant has opened the door on direct testimony, is necessarily limited in scope. In the instant case, when Miller took the stand for redirect questioning he had already testified that he never owned a gun but later explained that he did "have" a gun once many years ago which was actually owned by a friend. On redirect he also admitted being arrested a year earlier in connection with guns but said the guns belonged to his brother-in-law. He thus sought to leave the impression in the jury's mind that he had never been convicted of unlawful use of weapons, and if such fact was untrue, the prosecutor was entitled to demonstrate that (by cross-examination). (*People v. Bey* (1969), 42 Ill. 2d 139, 147, 246 N.E.2d 287.) While the recross on this point may have resulted in placing too much stress on the fact that the defendant pleaded guilty in that case, we do not believe the procedure was so improper as to require reversal. Defendant volunteered the information concerning the possession of marijuana and resisting arrest convictions, in an unresponsive answer to the prosecutor's question about the weapons charge. In addition to all the matters referred to, there was no objection from defense counsel to the line of questioning. Such an objection is normally a prerequisite for raising the issue on appeal. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 500, 292 N.E.2d 387.) We, therefore, conclude that, on the facts of this case, there was no

reversible error in the questioning by the prosecutor to which we have referred.

Defendant also complains of certain remarks made by the prosecutor in closing argument, which he asserts destroyed the presumption of innocence and shifted the burden of proof from the State to the defendant. This comment was as follows:

"If he (defense counsel) had stopped and not put Mr. Miller on, I would have been the first, and Mr. Neppl well knows that, to comment on the case and the fact that he asserted the defense of alibi and did not in fact produce any witnesses."

■■ While this comment is somewhat confusing (how an alibi could be asserted without testimony escapes us), the implication which defendant now draws is that, had he not presented witnesses to corroborate his alibi, the prosecutor would have commented on this failure to produce witnesses. There was no objection to such comment at the time it was made. In view of the lack of objection and the rather obscure comment, we see no prejudice to defendant which arises from the comment which would justify a reversal.

Defendant finally argues that he could not be convicted of both the armed robbery and aggravated battery charges since both offenses arose out of the same conduct. (*People v. Stewart* (1970), 45 Ill. 2d 310, 313, 259 N.E.2d 24.) The Illinois Supreme Court in *People v. Lilly* (1974), 56 Ill. 2d 493, 495-96, 309 N.E.2d 1, concluded that neither a conviction nor a sentence should be entered on lesser included offenses when defendant is found guilty of more than one crime arising out of the same conduct.

The test of whether offenses arise out of the same conduct is whether they are "separable" or "independently motivated." (*People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24; *People v. Bell* (3d Dist. 1975), 30 Ill. App. 3d 449, 450, 332 N.E.2d 619.) The distinction is sometimes particularly difficult to make in cases of robbery and aggravated battery charges since threat or force is an element of robbery (*People v. Ashford* (1st Dist. 1974), 17 Ill. App. 3d 592, 597, 308 N.E.2d 271).

In this case we find, as the court did in *People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24, nothing in the record which suggests that the shooting which constituted aggravated battery was independently motivated or otherwise separable from the robbery which immediately followed. The State's observation that the shooting ended before Miller asked for the victim's wallet has been noted, but it appears that the shooting was so interrelated with the robbery as to be, obviously, the use of force which caused the conduct to be robbery rather than theft.

While we reaffirm all our observations in *People v. Bell* (3d Dist. 1975), 30 Ill. App. 3d 449, 332 N.E.2d 619, on which the State relies, we conclude that case is distinguishable in that the robbery attempt there was well

underway when the defendant suddenly shot one of his victims for no apparent reason. In that case, the aggravated battery was clearly separable from the principal conduct of the defendant, which was robbery.

■■ The trial court in the instant case did not impose sentence on the lesser charge of aggravated battery and apparently concluded that the battery arose out of the same conduct and could not warrant a separate sentence, either concurrent or consecutive. We agree that under the precedent of *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, it is clear that not only should the sentence not be imposed, but judgment of conviction should not be entered either.

The judgment on the aggravated battery charge is, therefore, vacated and the conviction of defendant Miller on the armed robbery charge and the sentence imposed pursuant thereto is affirmed.

Judgment of conviction of armed robbery affirmed. Judgment of conviction of aggravated battery vacated.

STOUDER and BARRY, JJ., concur.